|  | UNITED STATES DISTRICT COURT<br>DISTRICT OF PUERTO RICO |  |
|---|---|---|
| SEA STAR LINE CARIBBEAN, LLC,<br><br>     Libelant,<br><br>     v.<br><br>M/V SUNSHINE SPIRIT,<br><br>     Libelee in rem.<br>--------------------------------<br>RADIANCE SHIPPING LINE, LLC,<br><br>     Third-Party Plaintiff,<br><br>     v.<br><br>SEA STAR LINE CARIBBEAN, LLC,<br><br>     Third-Party Defendant. |  | Civil No. 09-1152 (JAF) |

**OPINION AND ORDER**

Libelant, Sea Star Line Caribbean, LLC, institutes libel in admiralty against Libelee, M/V Sunshine Spirit (the "vessel"). (Docket No. 1.) Claimant Radiance Shipping Line, LLC, the vessel's owner, brings an action against Libelant, alleging wrongful arrest, unjust enrichment, and breach of charter party. (Docket No. 19.)

Libelant moves to dismiss Claimant's complaint under Federal Rule of Civil Procedure 12(b)(1) (Docket No. 79); Claimant opposes (Docket No. 82); and Libelant replies (Docket No. 87). Claimant moves to transfer this case to the Middle District of Florida (Docket

Nos. 82; 83); Libelant opposes (Docket No. 91); and Claimant replies (Docket No. 92). Claimant also moves for summary judgment under Rule 56(c) (Docket Nos. 60; 95); Libelant opposes (Docket No. 103); and Claimant replies (Docket No. 109).

Libelant moves to strike Claimant's affidavits submitted in support of its motion for summary judgment (Docket No. 100), and Claimant opposes (Docket No. 102). Libelant further moves to deem certain statements admitted under Rule 36(a)(6) (Docket No. 101), and Claimant opposes (Docket No. 111).

## I.

## **Factual and Procedural Synopsis**

We derive the following facts from the parties' pleadings, briefs, statements of uncontested material facts, and exhibits, and Libelant's motion in compliance. (Docket Nos. 1; 19; 26; 60; 95; 96; 100; 101; 102; 103; 107; 111.)

Libelant is an international common ocean carrier engaged in the container shipping business throughout the Caribbean and has a principal place of business in Jacksonville, Florida. Claimant is a Florida corporation that owns the vessel in dispute. Interline Connection, N.V. ("Interline") is incorporated under the laws of the Netherlands Antilles and is engaged in the carriage of goods by sea.

On July 6, 2007, Interline and Libelant formed a confidential sub-charter agreement, under which Interline furnished the vessel for Libelant's use between the ports of St. Maarten, Saint Kitts,

Antigua, Tortola, and San Juan, Puerto Rico.[1]  (Docket No. 107-3.) Interline undertook to ensure that the vessel would be berthed at Libelant's terminal at Puerto Nuevo, Puerto Rico, each Friday at 10:00 am for loading of cargo.  Interline retained control over the vessel under this time charter, which commenced on July 27, 2007, and concluded on January 22, 2008.

On December 12, 2007, Claimant and Interline formed a bareboat charter party (the "charter") in St. Maarten under the laws of the Netherlands West Indies. (Docket No. 102-2.) This demise charter tendered full use and control of the vessel to Interline as charterer.  The duration of the charter was for forty-eight months and, under Clause 31, title ownership of the vessel would transfer to Interline at the end of the period.  In other words, the parties designed the charter hire as a conditional sale of the vessel. Furthermore, Clause 15 of the charter obliged Interline to prevent all liens from attaching to the vessel and to indemnify Claimant if Interline breaches this clause.

On February 8, 2008, Libelant and Interline concluded a sales agency agreement whereby Interline became the sales agent for Libelant in the eastern Caribbean Sea. (Docket No. 107-2.) Under this sales agency, Interline undertook to solicit and promote Libelant's cargo transport services exclusively for five years, commencing on

---

[1] The record is silent as to Interline's authority to form a sub-charter for the vessel in July 2007.

February 15, 2008.  The sales agency continues in force to this day. (Docket No. 95-3 at 116.)

Libelant and Interline drafted a memorandum of understanding relating to their operations over the entire eastern Caribbean region that was meant to become effective on February 1, 2008. (Docket No. 107-4.) Under this agreement, Interline was "to integrate, in its entirety his [sic] weekly San Juan, Puerto Rico service . . . over to [Libelant]."  This agreement also contemplated Libelant's use of the vessel under a two-year time charter and Libelant's provision for the vessel's maintenance and repair. Libelant insists that it and Interline never executed this agreement. (Docket No. 107-1.)

However, during his deposition of September 2, 2009, Neal Perlmutter, Libelant's chief financial officer, testified that the agreement became effective at some time around February 1, 2008. (Docket No. 95-3 at 27, 45-47, 54-55.) Under this arrangement, Libelant took over Interline's inter-island services in the eastern Caribbean. (Id. at 30.) The vessel was to be the sole ship for their combined services.  (Id. at 90.)  Perlmutter testified that Libelant and Interline contemplated a formal sharing of equity ownership in the vessel, one-half to each party.  (Id. at 65-66.)  Furthermore, the two companies engaged in discussions around April 2008 over the anticipated sharing of profits from their operation of the vessel. (Id. at 90-91.)

Responding to an inquiry from Claimant, Ellen Ehrenkranz confirmed on October 18, 2008, that Libelant had reviewed the charter between Claimant and Interline. (Docket No. 60-6.) According to Perlmutter, Ehrenkranz is the sister of Mark Swerdel, the managing director of Interline. (Docket No. 95-3 at 34-35.) She worked as a ship broker and accountant for Interline.

On June 12, 2008, Interline and Claimant agreed to a modification of their charter, under which Interline assigned all rights as charterer to Inter-Island Maritime, Ltd., but retained all obligations under the charter. (Docket No. 102-2.) According to Perlmutter, Libelant held a meeting with Interline in late 2008, during which Libelant became aware that Claimant had not been paid charter hire under the charter. (Docket No. 95-3 at 108.)

On February 18, 2009, Libelant filed libel in this court. (Docket No. 1.) In support of its claim for liens against the vessel, Libelant appended a table of services rendered for the benefit of the vessel, dating from March to December 2008. (Docket No. 1-2.)

On March 11, Claimant included a complaint against Libelant in its answer to the libel. (Docket No. 19.) On July 7, Claimant moved for partial summary judgment on its claims. (Docket No. 60.) On August 19, Libelant moved to dismiss Claimant's complaint (Docket No. 79); Claimant opposed on September 7 (Docket No. 82); and Libelant replied on September 16 (Docket No. 87). On September 7, Claimant moved to transfer venue (Docket Nos. 82; 83); Libelant

Civil No. 09-1152 (JAF)                                                    -6-

opposed on September 24 (Docket No. 91); and Claimant replied on October 6 (Docket No. 92). On October 16, Claimant renewed its motion and moved for summary judgment on all claims and counterclaims (Docket No. 95); Libelant opposed on November 2 (Docket No. 103); and Claimant replied on November 12 (Docket No. 109). On November 9, we ordered Libelant to produce all of its contracts relating to the vessel and its agency relationship with Interline (Docket No. 106); Libelant complied the next day (Docket No. 107).

On October 29, Libelant moved to strike two affidavits supporting Claimant's motion for summary judgment (Docket No. 100), and Claimant opposed the following day (Docket No. 102). On October 30, Libelant moved to deem certain statements admitted (Docket No. 101), and Claimant opposed on November 12 (Docket No. 111).

**II.**

**Analysis**

**A.   Motion to Dismiss**

Libelant moves for dismissal on the grounds that Claimant has failed to sufficiently plead a basis for our subject-matter jurisdiction over Claimant's claims. (Docket No. 79.) Libelant argues that we lack the competence to hear Claimant's claims in admiralty because Claimant filed its complaint as a counterclaim when Libelant had merely brought libel against the vessel in rem.  (Id.)

Under Federal Rule of Civil Procedure 12(b)(1), a movant may challenge the sufficiency of the plaintiff's averments in support of the court's subject-matter jurisdiction. Valentín v. Hosp. Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001). The court takes the plaintiff's "jurisdictionally-significant facts as true" and "assess[es] whether the plaintiff has propounded an adequate basis for subject-matter jurisdiction." Id.; see Torres-Negrón v. J & N Records, LLC, 504 F.3d 151, 162-63 (1st Cir. 2007). The party asserting jurisdiction bears the burden of showing its existence. See Skwira v. United States, 344 F.3d 64, 71 (1st Cir. 2003).

Libelant commenced this case in admiralty to enforce its putative liens against the vessel in rem. (Docket No. 1.) Rule 14(c)(1) permits claimants in admiralty to implead third-parties who may be liable to claimant. Fed. R. Civ. P. 14(c)(1). While Claimant erroneously called its complaint a counterclaim (Docket No. 19) when Libelant never brought libel against Claimant in personam (Docket No. 1), Rule 14 permits Claimant to bring a third-party complaint, provided that we have jurisdiction over its claims.

This court is vested with admiralty jurisdiction by virtue of 28 U.S.C. § 1333. Claimant's complaint charges Libelant with wrongful arrest of the vessel, unjust enrichment, and breach of charter party. (Docket No. 19.) Disputes over the performance of charter parties have always been the province of courts in admiralty. United States v. Carr, 49 U.S. 1 (8 How. 1) (1849). Similarly, federal courts in

Civil No. 09-1152 (JAF)                                              -8-

admiralty have always permitted cross-libel for wrongful arrest where the libelant had maliciously prosecuted libel. See, e.g., Frontera Fruit Co. v. Dowling, 91 F.2d 293 (5th Cir. 1937).

In arguing against our competence, Libelant cites the Fifth Circuit decision in Incas & Monterey Printing & Packaging, Ltd. v. M/V Sang Jin, 747 F.2d 958 (1984). (Docket No. 79.)  This case is inapposite as the issue before the court was the necessity of counter-security under Supplemental Rule E(7), not jurisdiction over the claim for wrongful arrest itself. See id. at 965. We are, therefore, satisfied that we possess maritime jurisdiction over two of three claims in Claimant's complaint.

Accordingly, we may also entertain Claimant's claim against Libelant for unjust enrichment arising out of Libelant's alleged failure to recompense Claimant for use of the vessel (Docket No. 19). See 28 U.S.C. § 1367(a). Furthermore, to the extent that the claim resembles indebitatus assumpsit at common law resulting from Libelant's breach of charter party, it is properly within the scope of our admiralty jurisdiction. See Exxon Corp. v. Cent. Gulf Lines, 500 U.S. 603, 610 (1991).

We qualify our exercise of supplemental jurisdiction, however, by noting that Claimant lacks standing to pursue a remedy in quantum meruit for services rendered by Motor-Services Hugo Stamp, Inc. ("Hugo Stamp") (Docket No. 19). The loss, if any, is not borne by

Claimant.[2]  Furthermore, there is no indication of a relationship between Claimant and Hugo Stamp such that Claimant could represent Hugo Stamp in a lawsuit.

**B.   Motion to Transfer Venue**

Claimant moves to transfer this case to the Middle District of Florida pursuant to 28 U.S.C. § 1404(a). (Docket No. 28.) Claimant argues that (1) both Libelant and Claimant maintain a principal place of business in that district; (2) ten of sixteen witnesses are domiciled in the United States proper, five of whom reside in Florida; and (3) that, as the vessel has been sold by judicial decree and remains only as proceeds deposited in the court's registry, there is no substantial connection with this district. (Id.)

Under 28 U.S.C. § 1404(a), "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  We have broad discretion in granting or denying a motion for transfer. See Auto Europe, LLC v. Conn. Indem. Co., 321 F.3d 60, 64 (1st Cir. 2003).

While the proceeds relating to this vessel could be easily remitted to the Middle District of Florida, we find compelling reasons to retain this case for the convenience of the parties. First, we are moments away from trial and the parties have presumably

---

[2] See Lance v. Coffman, 549 U.S. 437, 439 (2007) (noting that standing is necessary for a court's subject-matter jurisdiction).

provided for the contingency of litigation in Puerto Rico by this point. Second, this district has already expended considerable resources in this case. We, therefore, decline to transfer venue.

### C.    Motion for Summary Judgment

Claimant argues that it is entitled to summary judgment on all claims because, <u>inter alia</u>, the charter included a "no-liens clause"; Libelant was aware of the prohibition against liens; and Libelant, as co-venturer, could not attach a lien on the vessel. (Docket Nos. 60; 95.) We address these contentions with respect to the validity of the vessel's arrest and Claimant's claims for wrongful arrest, breach of charter party, and unjust enrichment.

#### 1.    Validity of Arrest

Under the Federal Maritime Lien Act, the owner or master of the vessel, a person entrusted with the vessel's management at the port, or any of their agents, is "presumed to have authority to procure necessaries for [the] vessel." 46 U.S.C. § 31341(a). A person who provides such necessaries creates a maritime lien against the vessel and may enforce his right as a lien creditor. <u>Id.</u> § 31342(a).

However, where the putative lienor is actually aware of a clause in the charter party that prohibits liens, no liens may attach. <u>Gulf Oil Trading Co. v. M/V Caribe March</u>, 757 F.2d 743 (5th Cir. 1985). Furthermore, it remains the rule in admiralty that the owner of the vessel cannot create liens against it. <u>Frontera Fruit</u>, 91 F.2d at 296. The charterer under a demise charter party is treated as the

Civil No. 09-1152 (JAF)                                                        -11-

vessel's owner pro hac vice.  The South Coast, 251 U.S. 519, 523 (1920).

With respect to co-venturers, common-law principals of agency apply to cases in admiralty.  CEH, Inc. v. F/V Seafarer, 70 F.3d 694, 704 (1st Cir. 1995); accord Kirno Hill Corp. v. Holt, 618 F.2d 982, 985 (2d Cir. 1980).  However, we look to Puerto Rico law for the choice-of-law rule to determine the existence of a partnership.  Allstate Ins. Co. v. Occidental Int'l, Inc., 140 F.3d 1, 3 (1st Cir. 1998).  Puerto Rico applies the "dominant or significant contacts" test to find the appropriate rule of decision to resolve contractual relationships.  Id.

In the case at bar, it is beyond dispute that the charter between Claimant and Interline included a no-liens clause. (Docket No. 102-2.)  The pertinent question, then, is whether Libelant was aware of this provision or if it was legally barred from creating liens on account of its ownership pro hac vice.

Claimant contends that Interline and Libelant are co-venturers. (Docket No. 95.)  Libelant and Interline entered into a series of agreements in 2007 and 2008.  The confidential sub-charter emphasized the importance of berthing the vessel at San Juan, Puerto Rico, on a weekly basis for Libelant's operations. (Docket No. 107-3.)  Under the sales agency, Interline undertook to promote Libelant's services in the eastern Caribbean.  (Docket No. 107-2.)  The memorandum of understanding between the companies evinces a clear intent to merge

their operations and subsume Interline under Libelant's banner, with the primary base of operations in San Juan, Puerto Rico. (Docket No. 107-4.) Therefore, Libelant and Interline were parties to a business relationship governed by Puerto Rico law. See Allstate Ins. Co., 140 F.3d at 3.

The Civil Code of Puerto Rico recognizes general partnerships, which "may consist of all the present property or of the profits." 31 L.P.R.A. §§ 4317-4318 (1990). A partner acting under express or implied authority may incur obligations on behalf of the partnership. Id. § 4371.

In his deposition testimony, Perlmutter emphasized the collaboration between Libelant and Interline in operating the vessel for their combined eastern Caribbean services. (Docket No. 95-3.) The parties contemplated equal shares in the vessel and division of profits from operation of the vessel. Perlmutter affirmed that the vessel was essential to the purpose of their joint venture. Taken together, the memorandum of understanding, sales agency agreement, and Perlmutter's testimony demonstrate that, as of February 2008, Libelant and Interline had formed a general partnership as implied in Puerto Rico law.

In her role as accountant for Interline, Ehrenkranz' statements by e-mail are attributable to Interline as her principal. See Fed. R. Evid. 801(d)(2). Because Interline and Libelant are general partners, Interline's awareness of the no-liens clause is imputed to

Civil No. 09-1152 (JAF)                                                        -13-

Libelant under the rules of agency. See id.; Restatement (Third) of Agency § 5.04 (2006). Accordingly, we find that Libelant was aware of the no-liens clause by February 2008.

Moreover, Libelant could not have created liens against the vessel as its charterer. Although Interline and Claimant formed their charter on December 12, 2007 (Docket No. 102-2), prior to the formation of the general partnership in February 2008, Interline's demise charter became a joint asset of the partnership. Thus, Libelant became part owner pro hac vice of the vessel. See The South Coast, 251 U.S. at 523. It follows that Libelant could not have created valid liens after the formation of the partnership. See Frontera Fruit, 91 F.2d at 296. All of the charges that Libelant asserted in its libel post-dated the creation of this partnership. (Docket No. 1-2.) Therefore, Libelant had no legal basis to prosecute libel and arrest the vessel.

**2.   Wrongful Arrest**

To recover damages for wrongful arrest, Claimant must demonstrate "bad faith, malice, or such negligence as would constitute bad faith" on Libelant's part in prosecuting libel. Frontera Fruit, 91 F.2d at 294. For the same reasons that we find no legal basis for Libelant's arrest of the vessel, we also find that Libelant acted with malice or gross negligence in instituting this case. Libelant is charged with implied actual knowledge of the no-liens clause, and it is a sophisticated business entity engaged in

Civil No. 09-1152 (JAF)                                                -14-

the trade of carriage of goods by sea. Furthermore, the patent incongruity between Perlmutter's admission that Libelant and Interline had concluded their memorandum of understanding (Docket No. 95-3) and Libelant's argument in opposition to summary judgment (Docket No. 107-1) hints at bad faith. We, therefore, find Libelant culpable of wrongful arrest as a matter of law.

### 3. Breach of Charter Party

Furthermore, we find Libelant liable for breach of the charter party as a matter of law. Interline's rights and obligations under the charter became part of its partnership with Libelant. See 31 L.P.R.A. § 4318. Moreover, Interline retained its obligations under the charter, even though it assigned the rights to another entity in June 2008. (Docket No. 102-2.) Accordingly, Interline's breach of the charter by permitting the attachment of liens is imputed to Libelant as a general partner. See 31 L.P.R.A. § 4371.

### 4. Unjust Enrichment

Finally, because Libelant has breached the charter party, it may be held to account for debts owed under the charter. See Exxon Corp., 500 U.S. at 610. Moreover, Libelant has admitted its awareness that Claimant was owed charter hire under the charter. (Docket No. 95-3.) Furthermore, to the extent that Libelant used the vessel for some period of time not covered by the demise charter, it must be liable to Claimant in quantum meruit. Therefore, Claimant is entitled to summary judgment on its claim for unjust enrichment.

Civil No. 09-1152 (JAF)                                                -15-

**D.   Evidentiary Motions**

We need not consider Libelant's motion to strike because we have not relied on the deposition testimonies of Swerdel or John Ludwig. (See Docket No. 100.) Furthermore, as we find that Libelant could not have created valid liens against the vessel, we need not address Libelant's motion to deem admissions. (See Docket No. 101.)

### III.

### Conclusion

In view of the foregoing, we hereby:

1) **GRANT IN PART** and **DENY IN PART** Libelant's motion to dismiss (Docket No. 79). We **DISMISS WITH PREJUDICE** Claimant's complaint **only** with respect to the portion of its claim for unjust enrichment that is based upon benefits conferred by **Hugo Stamp** (id.).

2) **DENY** Claimant's motion to transfer venue (Docket No. 83).

3) **GRANT IN PART** and **DENY IN PART** Claimant's motions for summary judgment (Docket Nos. 60; 95). We **VACATE** the arrest of M/V Sunshine Spirit. **Trial** will proceed on the remaining issue of the extent of Libelant's liability to Claimant.

4) **DENY AS MOOT** Libelant's motion to strike affidavits (Docket No. 100) and motion to deem admissions (Docket No. 101).

5) **DENY** Claimant's motion to adjourn (Docket No. 110).

Parties strongly urged to sit down and settle the case before the November 16 trial.

Civil No. 09-1152 (JAF)                                                     -16-

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 13th day of November, 2009.

                                        s/José Antonio Fusté
                                        JOSE ANTONIO FUSTE
                                        Chief U.S. District Judge